409 So.2d 112 (1982)
TIMES PUBLISHING COMPANY, a Florida Corporation, Appellant,
v.
L.R. HUFFSTETLER, Jr., Appellee.
No. 81-67.
District Court of Appeal of Florida, Fifth District.
January 27, 1982.
Talbot D'Alemberte of Steel, Hector & Davis, Miami, and George K. Rahdert and Joy M. Packer of Rahdert & Packer, St. Petersburg, for appellant.
A.P. Gibbs of Gibbs & McAlvanah, P.A., Dade City, for appellee.
DAUKSCH, Chief Judge.
This is an appeal from a judgment in a defamation suit.
Appellant's newspaper, The St. Petersburg Times, had published a news article containing false and defamatory allegations against appellee, a circuit judge. The article concerned certain alleged activities of and statements by appellee and the county sheriff. The defamatory nature of the publication is not an issue for our consideration so, for that reason, we have determined it to be of no value to go into the content of the newspaper article. Also, we will not go into the proof at trial which demonstrated the falsity of the story.
It is appellant's contention that the evidence is insufficient to support the verdict and judgment because even though the story was false, a newspaper should not be held to account for the falsehood, in damages, because the appellee failed to meet the standard required of public officials in proving libel cases.
It is clear that the applicable standard is the "actual malice" rule as articulated by the United States Supreme Court in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964): "the constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering in a libel suit unless he proves that the statement was made with "actual malice"  that is, with the knowledge that it was false or with reckless disregard *113 of whether it was false or not." 376 U.S. at 279-80, 84 S.Ct. at 725-26 (emphasis supplied). Subsequent decisions of the Court have enunciated the "actual malice" standard: "only those false statements made with the high degree of awareness of their probable falsity," Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964); evidence of either deliberate falsification or reckless publication "despite the publisher's awareness of probable falsity", Curtis Publishing Co. v. Butts, 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094 (1967); "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth," Gertz v. Robert Welch, Inc., 418 U.S. 323, 331, 94 S.Ct. 2997, 3002, 41 L.Ed.2d 789 (1974); proof of elements of common law malice, viz: spite, hostility, deliberate intention to harm, does not satisfy the constitutional requirement of "actual malice" in the absence of proof of deliberate falsity or reckless disregard for truth, Greenbelt Cooperative Publishing Ass'n. v. Bresler, 398 U.S. 6, 10, 90 S.Ct. 1537, 1539, 26 L.Ed.2d 6 (1970). And, in St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Court defined "reckless" publication:
These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
390 U.S. at 731, 88 S.Ct. at 1325. (emphasis supplied).
"Actual malice" must be proved with convincing clarity. New York Times v. Sullivan, 376 U.S. 254, 285-86, 84 S.Ct. 710, 728-29, 11 L.Ed.2d 686 (1964). This standard of proof has been applied by Florida courts, Gibson v. Maloney, 263 So.2d 632 (Fla. 1970), Palm Beach Newspapers v. Early, 334 So.2d 50 (Fla. 4th DCA 1976), and has been defined as requiring more than a preponderance of the evidence yet less than the criminal requirement of beyond a reasonable doubt.
In analyzing the evidence in a light most favorable to appellee we find it inescapable to conclude that the judgment for appellee cannot be sustained on the proof presented. There was no proof that appellant deliberately falsified the statement or was aware of probable falsity at the time of publication. According to the proof, the only misconduct that can be attributed to appellant is the reporter's failure to completely verify the article prior to publication.[1] Appellant's reporter did make an effort to contact appellee prior to publication in order to attempt to verify the story. We cannot say that appellant's actions leading up to publication give rise to a finding of "actual malice", i.e. knowledge of falsity or reckless disregard for falsity.
We find support for the appellant's position that the libelous statements resulted from an honest misunderstanding as to what was told to the reporter who caused the story to be published. The article is substantially accurate and is inaccurate only as to an event of minor significance when the entire story is considered.
The Supreme Court in New York Times v. Sullivan noted that the press has a special duty to inform the public of activities of public officials. "The public official rule *114 protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant." Garrison v. Louisiana, 379 U.S. 64, 77, 85 S.Ct. 209, 217, 13 L.Ed.2d 125 (1964). A public official runs the risk of closer public scrutiny than one with no involvement in public affairs. A judge in seeking the public trust and confidence must accept the burden of public interest in his personal life as well as public concern with his professional life. The Court in New York Times also observed that where judicial officers are involved in press publications, even the dignity and reputation of the courts do not justify exemption from the constitutional limitations on liability. Thus, even "half truths" and "misinformation" about judges are subject to constitutional limitation in punishment, as "judges are to be treated as `men of fortitude able to thrive in a hearty climate'." New York Times v. Sullivan, 376 U.S. 254 at 273, 84 S.Ct. 710 at 722, 11 L.Ed.2d 686, citing Justice Douglas in Craig v. Harney, 331 U.S. 367 at 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947).
A rule of strict liability compelling publishers to guarantee the accuracy of all factual assertions would lead to intolerable self censorship. The freedoms of the First Amendment would not be adequately protected by allowing the media to avoid liability only by proving the truth of all injurious statements. Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974).
The burden upon public officials is greater because the public's valid interest in their conduct and behavior requires the news media to publish more about them, thus giving more chances for honest error. This burden should not seem intolerable when one weighs the number of actually badly motivated cases against the public's right to know about their officials along with the First Amendment rights. The courts must protect the freedom of speech enjoyed by everyone, and most exercised by newspapers, just as the courts protect the other constitutional freedoms, such as protection against unlawful search and seizure and due process violations. In fact, and under the law, free expression stands at the base of all rights of a free man.
The appellant has raised other allegations of error which we need not deal with because it is our determination that the appellee failed to prove with legally sufficient evidence the essential element of actual malice, which requires a reversal.
REVERSED AND REMANDED for entry of judgment for the appellant.
ORFINGER and SHARP, JJ., concur.
NOTES
[1] Courts are generally cognizant of the pressures on a newspaper for timely dissemination of news information. The Florida Supreme Court in Ross v. Gore, 48 So.2d 412 (Fla. 1950), recognized that:

this court judicially knows that it frequently takes a legal tribunal months of diligent searching to determine the facts of a controversial situation. When it is recalled that a reporter is expected to determine such facts in a matter of hours or minutes, it is only reasonable to expect that occasional errors will be made. Yet, since the preservation of our American democracy depends upon the public's receiving information speedily ... it is vital that no unreasonable restraints be placed upon the working news reporter or the editorial writer.
Id. at 415.