481 So.2d 931 (1985)
Anthony J. NICHOLSON, et al., Appellants,
v.
Walter KELLIN, et al., Appellees.
No. 84-1834.
District Court of Appeal of Florida, Fifth District.
December 12, 1985.
Rehearing Denied January 23, 1986.
*933 David H. Simmons and Susan W. Gibson, of Drage, deBeaubien, Milbarth & Simmons, Orlando, for appellants.
William L. Rogers, of Barrett & Rogers, Miami, for appellees.
UPCHURCH, Judge.
Appellants Nicholson and Ariko appeal from a final order dismissing their fifth amended complaint against appellees Walter Kellin, Mitchell Lipshultz and Harriette Lipshultz. Nicholson and Ariko contend that this complaint which charged Kellin and the Lipshultzes with fraud and misrepresentation should not have been dismissed. We agree.
The complaint against Kellin and the Lipshultzes contained the following relevant allegations:
1. Kellin and the Lipshultzes were officers, directors and stockholders of Polar Chips International, Inc., a corporation which distributed ice vending machines.
2. On November 14, 1978, Nicholson and Ariko entered into an agreement to purchase ice vending machines from Polar Chips.
3. On December 5, 1979, Nicholson and Ariko entered into another agreement to purchase ice vending machines from Polar Chips.
4. Along with the purchase agreement, Nicholson and Ariko entered into agreements whereby Polar Chips would manage and maintain the ice vending machines.
5. Nicholson and Ariko were never involved in the vending machine business. Their investment was based on the actions, representations and omissions to act of Kellin and the Lipshultzes.
6. Nicholson and Ariko were dependent on the expertise and knowledge of Kellin and the Lipshultzes regarding the profitability of the ice vending machines because:
a) they had no knowledge of the ice vending machine business,

*934 b) the ice machines and management agreements were sold as part of one package,
c) Kellin and the Lipshultzes were represented to be uniquely qualified regarding the management of ice machines because of their prior business experience, their independent knowledge regarding locations and maintenance of the machines, and the size of their ice machine business which allegedly included thousands of machines, and
d) the profitability and success of their venture was represented by Kellin to be related and dependent upon Polar Chips managing the venture.
7. Nicholson and Ariko never met the Lipshultzes but alleged that the following misrepresentations, bad acts or omissions induced them to invest in Polar Chips:
a) the Lipshultzes were known by Nicholson and Ariko to be officers, directors and employees of Polar Chips and were considered to be key personnel of Polar Chips by Kellin,
b) on reason and belief, the Lipshultzes had made sales pitches to other investors to invest in Polar Chips. Nicholson and Ariko believed that the Lipshultzes had made a personal commitment to Polar Chips,
c) the Lipshultzes were connected with Polar Chips since its creation in 1976,
d) Kellin was acting not only on behalf of himself and Polar Chips but also as agent and representative for the Lipshultzes. On reason and belief, the Lipshultzes were fully aware or should have reasonably known of all of Kellin's representations to Nicholson and Ariko concerning not only the Polar Chips venture but the Lipshultzes' involvement as well. The Lipshultzes fully acquiesced and helped orchestrate the representations made to Nicholson and Ariko by Kellin and also allowed Kellin to associate their names and personal involvement with Polar Chips,
e) Mitchell Lipshultz, in August 1978, orally agreed to guarantee a loan taken out by Nicholson and Ariko payable to Sun Bank. By executing this guarantee, Mitchell Lipshultz indicated to Nicholson and Ariko that he personally stood behind the viability of Polar Chips to the extent that he would risk a portion of his personal financial net worth on the likelihood of success of the venture. In fact, the Lipshultzes had no intention of guaranteeing Nicholson and Ariko's loan obligation. The Lipshultzes' actions in guaranteeing the loan induced Nicholson and Ariko to go forward with the investment in Polar Chips. Nicholson and Ariko believed that the Lipshultzes were financially well settled and this convinced them that the venture was worthwhile. At the time of the oral guarantee, the Lipshultzes were taking affirmative steps to disassociate themselves from Polar Chips. The Lipshultzes did not inform Nicholson and Ariko of this fact and had they known of it, Nicholson and Ariko would not have invested in Polar Chips,
f) the Lipshultzes took part in making payoffs to Allen McArthur, the president of Florida National Bank. McArthur was falsely advising depositors and customers of Florida National Bank, including Nicholson and Ariko, that they should invest in Polar Chips. The Lipshultzes failed to disclose this kick-back scheme to Nicholson and Ariko,
g) on reason and belief, all of the activities of Kellin, McArthur, and Mitchell Lipshultz were jointly determined and orchestrated by the Lipshultzes to be performed or conducted by the individuals mentioned.
8. The Lipshultzes prepared documents given to potential investors which contained false information and encouraged Kellin to make false representations to these potential investors.
9. The Lipshultzes and Kellin were engaged in a "ponzi" scheme whereby they sold nonexistent ice vending machines *935 and used the proceeds from such sales to pay money pursuant to their management contract.
10. The Lipshultzes knew of Polar Chips' impending financial doom and the fraudulent activities of Kellin which would cause the demise of Polar Chips.
11. The Lipshultzes had an affirmative duty to disclose to Nicholson and Ariko that:
a) McArthur was not acting as an independent advisor in recommending Polar Chips as an investment,
b) McArthur was being paid by Polar Chips to promote the sale of Polar Chips ice machines,
c) Kellin's representations about Polar Chips were false,
d) the Lipshultzes were leaving Polar Chips and would no longer be associated with Polar Chips,
e) Polar Chips had no reasonable likelihood of success,
f) the Lipshultzes were conspiring with and aiding and abetting Kellin in Polar Chips and defrauding its investors,
g) Polar Chips' financial condition was rapidly deteriorating.
As this court has previously stated, the essential elements of a fraudulent representation are: 1) a false statement concerning a specific material fact; 2) the defendant's knowledge that the representation is false; 3) an intention that the representation induce another to act on it; and 4) injury to the plaintiff acting in reliance on the representations. Blake v. Munce, 426 So.2d 1175 (Fla. 5th DCA 1983); Amazon v. Davidson, 390 So.2d 383 (Fla. 5th DCA 1980).
In the present case, Nicholson and Ariko alleged that Walter Kellin misrepresented the prospects of Polar Chips and its continuing viability by stating or implying that there existed guaranteed returns and profits as stated in the management contract. Nicholson and Ariko further alleged that Polar Chips was engaged in a "ponzi scheme" whereby it sold nonexistent ice machines and used those profits to pay investors on their management contracts. They also alleged, among other things, that McArthur, the president of Florida National Bank, had accepted bribes to promote Polar Chips. Nicholson and Ariko admitted that they had never met the Lipshultzes, but alleged that "the Lipshultzes fully acquiesced and helped orchestrate the representations made to Nicholson and Ariko by Kellin and also allowed Kellin to associate their names and personal involvement with Polar Chips." Nicholson and Ariko further alleged that "all of the activities of Kellin, McArthur and M. Lipshultz which form the basis for Nicholson and Ariko's actions, were not only mutually consented to but were jointly determined and orchestrated by the Lipshultzes and Kellin to be performed or conducted by the individuals mentioned." These allegations are sufficient to implicate the Lipshultzes in a fraudulent conspiracy.
A conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose by unlawful means. See Kent v. Kent, 431 So.2d 279 (Fla. 5th DCA 1983). Each act done in pursuance of a conspiracy by one of several conspirators is an act for which each is jointly and severally liable. 10 Fla.Jur.2d § 3, Conspiracy-Civil Aspects (1979). Here, Nicholson and Ariko alleged that Kellin misrepresented Polar Chips as a viable, profitable corporation which it was not and that these misrepresentations were made to defraud investors. These allegations must be taken as true, Held v. Trafford Realty Co., 414 So.2d 631 (Fla. 5th DCA 1982), and if proven, would amount to a civil wrong. Nicholson and Ariko also alleged that the Lipshultzes acted in concert with Kellin and others to defraud potential investors such as themselves. Again, these allegations must be taken as true. Under a conspiracy theory, the Lipshultzes would be just as liable as their co-conspirator, Kellin. Based on the allegations of a fraudulent conspiracy, we conclude that the fifth amended complaint states a cause of *936 action. See Kent v. Kent (allegations that trustee and son conspired to deplete trust assets sufficient to state a cause of action); Costa Bella Development Corp. v. Recarey, 390 So.2d 100 (Fla. 3d DCA 1980) (allegations that the defendants, owners of a development corporation, fraudulently conspired to extinguish plaintiff's rights and security under a mortgage were sufficient to state a cause of action against the defendants in their individual capacities). A complaint which states a cause of action on any ground should not be dismissed for failure to state a cause of action. Vantage View v. Bali East Dev. Corp., 421 So.2d 728 (Fla. 4th DCA 1982). Accordingly, the fifth amended complaint should not have been dismissed.
The arguments raised by the Lipshultzes are without merit. First, the Lipshultzes contend that Nicholson and Ariko failed to specify the actual statements made by them which were false. While Nicholson and Ariko alleged that the false statements were made by Kellin, they also alleged that the Lipshultzes and Kellin were involved in a conspiracy to defraud them and thus the Lipshultzes would be liable for statements by Kellin made in furtherance of the conspiracy.
Second, the Lipshultzes argue that their statements, if any, were of future action or opinion and hence were not actionable. See Blake v. Munce (generally a false representation must be of a past or existing fact). Here, Nicholson and Ariko alleged that the Lipshultzes knew of the present scheme to defraud investors and of Polar Chips' actual financial condition. Thus, the statements made to Nicholson and Ariko would be actionable.
Third, the Lipshultzes argue that they, as directors of Polar Chips, could be liable only for their actual participation in any fraud. See Cameron v. Outdoor Resorts of America, Inc., 611 F.2d 105 (5th Cir.1980) (president of corporation which was liable for negligent misrepresentations of its agents could be liable for fraud only on the basis of his actual misrepresentations or his actual participation in his colleagues' misrepresentations). Again, the allegations of a conspiracy are sufficient to state a cause of action against the Lipshultzes as individuals.
Fourth, the Lipshultzes claim the fact that they guaranteed Nicholson and Ariko's loan from Sun Bank establishes their good, and not bad, faith. Nicholson and Ariko, however, alleged that Lipshultz had no intention at the time that he executed the guarantee of making it good if the Polar Chips venture failed. This allegation supports Nicholson and Ariko's claim that the Lipshultzes were holding Polar Chips out as a good investment while in reality it was a sham.
Fifth, the Lipshultzes contend that they owed Nicholson and Ariko no fiduciary duty and hence their mere nondisclosure of all material facts is not actionable. However, even assuming that a party to a transaction owes no duty to disclose facts within his knowledge or to answer inquiries respecting such facts, if he undertakes to do so he must disclose the whole truth. See Vokes v. Arthur Murray, Inc., 212 So.2d 906 (Fla. 2d DCA 1968). Here, Nicholson and Ariko alleged that Kellin and the Lipshultzes had disclosed some facts and thus they were under a duty to do so in a non-negligent or non-fraudulent fashion.
Sixth, the Lipshultzes contend that Nicholson and Ariko failed to plead ultimate facts establishing that Kellin was the Lipshultzes' agent. In light of the allegations of conspiracy, the agency issue need not be decided.
Finally, the fact that Nicholson and Ariko may have been negligent in investigating the Polar Chips operation does not bar their claim. In Besett v. Basnett, 389 So.2d 995 (Fla. 1980), the Florida supreme court held that a recipient may rely on the truth of the representation even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.
*937 In sum, we conclude that the fifth amended complaint did state a cause of action and was improperly dismissed.
REVERSED and REMANDED for further proceedings.
COBB, C.J., and VANN, H.R., Associate Judge, concur.