742 So.2d 451 (1999)
Rand HOCH, Appellant,
v.
RISSMAN, WEISBERG, BARRETT, etc., et al., Appellees.
No. 98-462, 98-1393.
District Court of Appeal of Florida, Fifth District.
September 17, 1999.
*454 Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellants.
Daniel J. Gerber and Donna C. Valin of Rumberger, Kirk & Caldwell, P.A., Orlando, for Appellees DeCiccio and Associates, P.A., and Daniel DeCiccio.
Benjamin H. Hill, III, Dennis P. Waggoner, W. Hampton Keen, and Marie A. Borland of Hill, Ward & Henderson, P.A., Tampa, for Appellees Rissman, Weisberg, et al.

ON APPELLANT'S MOTION FOR CLARIFICATION
ON APPELLEES' MOTION FOR REHEARING AND/OR CLARIFICATION OR ALTERNATIVELY FOR CERTIFICATION OF QUESTION OF GREAT PUBLIC IMPORTANCE
ON APPELLEES' MOTION FOR CLARIFICATION OF ORDER GRANTING APPELLANT'S MOTION FOR APPELLATE ATTORNEY'S FEES
W. SHARP, J.
We deny appellees' motion for rehearing or for certification of a question of great public importance. However, we grant the motions for clarification to address concerns raised by the parties. We withdraw the original opinion and substitute the following in its place.
Hoch appeals from a final judgment and a final judgment for costs in favor of Rissman, Weisberg, Barrett, Hurt, Donahue and McLain, P.A. and individual members of the Rissman law firm,[1] and from a final summary judgment and final judgment for costs in favor of Daniel DeCiccio and his law firm, DeCiccio & Associates, P.A. Hoch argues that there were genuine issues of material fact in his defamation action against the defendants and that the trial court should not have dismissed his *455 claim for conspiracy to defame. We agree as to the Rissman law firm and its members and accordingly reverse that final judgment and final judgment for costs.[2] However, we conclude that DeCiccio and his law firm were entitled to summary judgment and affirm that judgment and cost judgment.
In the early 1990's, the Rissman law firm presented a series of seminars entitled "Sleeping with the Enemy." These seminars provided "inside" information about the tendencies and proclivities of lawyers, judges and other individuals in the area of worker compensation claims. This information was designed to help claims adjusters process their filesto decide whether claims should be settled or controverted, and whether certain lawyers should be pushed for trial or approached for an early settlement. At the time, Hoch was a compensation claims judge.
In May 1994, the Rissman firm presented one of these seminars for the Riscorp Corporation, a company which does worker's compensation insurance defense. About 50 to 60 people attended. Judith Boling, a Riscorp claims adjustor, took notes at the seminar. Boling's notes reflect the following regarding Judge Hoch:
JCC Hoch
rules oriented
very smart, challenging new statute (IME)
own list of Drs. keeps up to date list no mileagehe'll give a van!
stickler for pre-trialdef. stricken if missed
bad on atty fees $350/hr
strong on mediation
require adj to be live

likes...men in tight shorts & chiros [chiropractors] (emphasis added)
Boling's recollection of the context was that "if you wanted to influence Judge Hoch, you should send men in tight shorts before him." She also recalled a comment to the effect that the litigators should be blond.
Steven Rissman, Theodore Goldstein and a few other members of the Rissman firm presented the seminar. Goldstein spoke about Judge Hoch but denied making any offending statement about him. Boling did not recall the name of the speaker who made the comments about Judge Hoch and did not know whether it was Goldstein.
An eight-page memorandum purportedly based on this seminar later surfaced. The memorandum contains the following reference to Hoch:
The next discussion dealt with Judge Rand Hoch in Daytona. It was stated that you should "always send a young man in front of Judge Hoch, as he prefers boys in shorts." Said that Judge Hoch has lots of his own rules. He is challenging the new law, especially the IME rules. He keeps his own list of doctors. Will award mileage. He is a stickler for pre-trial. He is bad on attorney fees, awarding upwards of $350 per hour. He is a stickler for mediation, as it's required on each case, and everyone must appear live. Said he likes... and chiropractors, and he dislikes lying claimants.
In addition to the comment about Judge Hoch, the memo contains characterizations and observations about the other compensation claims judges and attorneys who practice in this field. Some of these comments include: "conservative," "liberal," "under investigation for illegal activities," "doesn't work often," "doesn't read depositions," "not oriented to complex issues," "very friendly with certain attorneys," "doesn't like Haitians and people who don't pay their taxes," "doesn't believe in psychiatrists or psychologists," "reasonably well prepared, takes tons of Hispanic cases," "always wants Spanish psychiatrists and *456 orthopedists and will use unauthorized doctors," "good credibility with judges," "steady but not rocket scientist," "has a big ego," "sells her claimants out," "king of DeLand," "don't know much about their files," "Old Sleepy," "not a good attorney," "Sleazy and Dopey," "should run a criminal background on all their clients," "honest but they won't spend money," "bright but very lazy," "likes to call you and scream at you, will try to intimidate you and then .... [is] willing to settle," [has a] "drinking problem, ... always talk to [him] before noon."
Hoch believed that DeCiccio prepared this memorandum from a tape recording anonymously sent to him and then faxed it to attorney Michael Bross intending that it would be circulated throughout the worker's compensation community. The memorandum was in fact circulated to numerous parties, including judges and attorneys. Hoch was later denied reappointment to his position as compensation claims judge.
Hoch then filed suit against the Rissman law firm and its members for slander, libel and conspiracy to defame and against DeCiccio and his law firm for libel. Hoch has acknowledged his homosexuality but alleged that the defamatory statement suggested that he was a pedophile or that he could be improperly influenced in his judicial duties by his sexual orientation. In addition to general damages, Hoch claimed that he was denied reappointment to his judicial position. Hoch believed that the statement was made after the Rissman firm suffered significant defeats in proceedings before him.
The trial court dismissed the conspiracy and libel counts against the Rissman defendants. The court later entered summary judgments on the remaining counts (slander and libel) in favor of all defendants. For the reasons discussed below, we affirm in part and reverse in part.

A. Statement
The court below found that the Rissman defendants had tendered competent evidence that they had not made the defamatory statement and that Hoch had failed to present competent counter evidence sufficient to reveal a sufficient issue. We conclude that there is sufficient evidence in the record, coupled with the reasonable inferences from this evidence, which presents a question of fact as to whether any of the Rissman defendants made the defamatory statement.
As this court has often noted, the party moving for summary judgment has the burden to prove conclusively the nonexistence of any issue of material fact. We must view the evidence in a light most favorable to the appellant and must draw all competing inferences in favor of the appellant. If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined. Maher v. Best Western Inn, 717 So.2d 97 (Fla. 5th DCA 1998); Besco USA Int'l Corp. v. Home Savings of America FSB, 675 So.2d 687 (Fla. 5th DCA 1996); Venezia v. Egan, 671 So.2d 175 (Fla. 5th DCA 1996).
In addition to Judith Boling, another Riscorp employee (Barbara Goltry) attended a Rissman seminar, although it was not the Riscorp seminar in May 1994. Goltry recalled a comment said in jest about Judge Hoch that "if you want to prevail either in Daytona or before Rand Hoch, you should send a boy in short pants." Goltry did not remember the name of the attorney with the Rissman firm who made that statement.
Although neither Boling nor Goltry could identify who actually made the comment about Hoch, a reasonable inference from their testimony was that it was a member of the Rissman law firm. The Rissman firm was the only party responsible for the seminars and the stated purpose of the seminars was to critique worker's compensation judges and attorneys who practice in the field. Rissman admitted *457 making unflattering comments about others and that the other comments about Hoch had been made. Rissman also conceded that it was possible that there had been a joking reference to Hoch's sexual preferences.
The only explanation advanced by Rissman for the existence of the comments about Hoch (and others) was that some unknown person or persons were trying to harm his firm. To have accomplished this task, these unknown persons would have had to attend one of the seminars or find the rather detailed notes of someone who did attend, add various unflattering comments about judges and attorneys to the already unflattering statements made by the speakers, type the eight-page memorandum and circulate it in the legal community. These unknown persons would also have had to conspire with Boling and Goltry, as both women recalled comments about Hoch at the seminars. Although certainly not impossible, this explanation seems implausible to us. The fact finder should determine whether any of the Rissman defendants made the defamatory statement.

B. Damages.
The trial court concluded that the Rissman defendants had tendered competent evidence that they had not caused Hoch to be refused reappointment to his judicial position and that Hoch had failed to supply competent counter evidence sufficient to reveal a genuine issue on this matter. On appeal, Hoch argues that the defamation is "slander per se" and therefore proof of special damages is not required.
Slander "per se" is actionable on its face, but slander "per quod" requires additional explanation of the words used to show that they have a defamatory meaning or that the person defamed is the plaintiff. Hood v. Connors, 419 So.2d 742 (Fla. 5th DCA 1982). In slander per se actions, general damages are presumed; for per quod actions, the plaintiff must allege and prove special damages. Hood. An oral communication that imputes to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office is slander per se. Campbell v. Jacksonville Kennel Club, 66 So.2d 495 (Fla.1953); Wolfson v. Kirk, 273 So.2d 774 (Fla. 4th DCA 1973).
Here the statement about Hoch suggests that his judicial duties could be improperly influenced. This imputes conduct or a condition incompatible with the proper exercise of his judgeship and constitutes slander per se. See Hood (complaint alleging that the defendant falsely stated that the plaintiff, while in office, had used public funds to pave private property stated a cause of action for slander per se); Sprovero v. Miller, 404 So.2d 793 (Fla. 3d DCA 1981) (statements which imputed conduct and characteristics to the plaintiff which were incompatible with the exercise of his construction business constituted slander per se); Wolfson (statement by defendant that plaintiff was "invited out of the office" might have been taken to mean that the plaintiff was a person with whom business relations were undesirable and thus constituted slander per se). See also Chiavarelli v. Williams, 256 A.D.2d 111, 681 N.Y.S.2d 276 (1998) (allegation that hospital official would misuse his supervisory powers to obtain sexual favors stated a claim for defamation pre se); Rejent v. Liberation Publications, Inc., 197 A.D.2d 240, 611 N.Y.S.2d 866 (1994) (unauthorized publication of male model's photograph in a magazine advocating homosexuality sufficient to state a cause of action for defamation per se). Thus no showing of special damages is required.

C. Attorney/Client Privilege.
The court below found that all communications between the Rissman law firm and Riscorp at the May 1994 seminar were within the context of an attorney/client meeting and were therefore absolutely *458 privileged. Thus the court concluded that even if made, the alleged defamatory statement was absolutely privileged and not actionable.
Section 90.502(2) provides that a client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client. A "client" includes a corporation which consults a lawyer for the purpose of obtaining legal services or who is rendered legal services by a lawyer. § 90.502(1)(b). The communication between a lawyer and client is deemed "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services to the client and those reasonably necessary for the transmission of the communication. § 90.502(1)(c).
The attorney/client privilege is only available when all of these elements are present. Provenzano v. Singletary, 3 F.Supp.2d 1353 (M.D.Fla.1997). The privilege does not extend to every statement made to a lawyer. If a statement is about matters unconnected with the business at hand or in general conversation, the matter is not privileged. Modern Woodmen of America v. Watkins, 132 F.2d 352 (5th Cir.1942). Mere attendance of an attorney at a meeting, even where the meeting is held at the attorney's instance, does not render everything said or done at that meeting privileged. International Telephone & Telegraph Corp. v. United Telephone Co. of Florida, 60 F.R.D. 177 (M.D.Fla.1973). For communications at a meeting to be privileged, they must relate to the acquisition or rendition of professional legal services and must have a confidential character. Id.
Jeffrey Berghorn, the claims manager for Riscorp, testified that the May 1994 seminar was intended to provide Riscorp adjusters with relevant information concerning attorneys and judges who would be handling worker's compensation matters. According to Berghorn, the information provided by the Rissman attorneys was known to be confidential in nature and intended to provide Riscorp adjusters with material which would be of assistance in the investigation, evaluation and settlement of worker's compensation claims. Berghorn claimed that the meeting began with Rissman indicating that the seminar material was "secret stuff." The meeting was not allowed to be taped. No management personnel has ever given anyone permission to waive the privilege.
However, Berghorn acknowledged that it may have been possible that he was contacted by members of the Rissman firm who said they wanted to come and put on the seminar. It was well known within the worker's compensation community that the Rissman firm was holding the "Sleeping with the Enemy" seminars on a regular basis over a number of years prior to May 1994. Except with regard to specific cases discussed with the Rissman firm, Berghorn had no expectation that the Rissman attorneys needed Riscorp's permission to repeat anything that was said at the seminar. Berghorn was unable to name a case out of his office which had been assigned to Hoch and was pending before him in May 1994.
Judith Boling believed that the seminar was being videotaped because she saw a video camera. As far as she was concerned, there was nothing confidential about the information being provided at the seminar. She did not recall any one from the Rissman firm saying that the matters discussed were attorney/client privileged and did not recall any statement that the information should be kept within the company. Boling felt free to take notes and she made her notes available to anyone in her office who wished to see them. Boling had cases that were being defended by the Rissman firm but did not ask any questions about these cases at the seminar. She felt that the seminar was *459 neither the time nor the place to discuss specific cases.
Steven Rissman delivered the opening remarks regarding the confidential nature of the information provided at the seminar. Rissman explained that the presentation was intended to be educational and was going to provide the adjusters with the proper way of evaluating cases, that is, to determine whether a case should be taken to trial or settled. Rissman told the participants that they would "lose their edge" and lose their advantage if they disclosed this information to others. However, he never told them that they did not have a right to communicate this information to other people. Rissman assumed that the seminar was for Riscorp personnel but he had "no problem" with this information being given to the law firm's other clients. Rissman could not recall whether he had contacted Riscorp or whether Riscorp had contacted him to put on the seminar. Rissman acknowledged that one of the primary purposes of the seminar was to generate business for his law firm.
When the memorandum surfaced containing remarks reportedly made at the seminar, Rissman freely acknowledged that he engaged in "damage control" and talked to others about the seminar and what was said and what was not said. Rissman admitted that he had "dozens of conversations" where he denied that he had prepared the memorandum. Rissman never invoked the attorney/client privilege. Other partners or members of the firm may have also spoken to people about the memorandum.
This evidence fails to support a determination that the defamatory statement at the Riscorp seminar was made pursuant to the rendition of "legal services" or that it was intended to be "confidential." Rather, the evidence indicates that the seminar was part of a plan to promote business and generate income for the Rissman firm. Rissman acknowledged that the information about judges and lawyers was presented at other seminars. Riscorp acknowledged that it had no expectation that its permission was needed to discuss this information and apparently no Riscorp files were discussed. The only "confidentiality" of the seminar was the advantage the adjusters would have if they knew the tendencies and foibles of judges and lawyers in the worker's compensation field this advantage would be lost if the information were disclosed and widely discussed.

D. Opinion.
The trial court ruled that the alleged defamatory statement was a statement of "pure opinion" and therefore not actionable. We recognize that expressions of opinion are privileged and are protected by our constitutions. From v. Tallahassee Democrat, Inc., 400 So.2d 52 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla.1982). See also Nodar v. Galbreath, 462 So.2d 803 (Fla.1984) (the constitutionally-protected right to discuss, comment upon, criticize, and debate, indeed the freedom to speak on any and all matters is extended not only to the organized media but to all persons).
However, the courts have recognized a distinction between a pure expression of opinion, which is not actionable, and a mixed expression of opinion. Sullivan v. Barrett, 510 So.2d 982 (Fla. 4th DCA 1987); From. Pure opinion occurs when a defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. Miami Child's World, Inc. v. Sunbeam Television Corporation, 669 So.2d 336 (Fla. 3d DCA 1996); Scandinavian World Cruises (Bahamas) Ltd. v. Ergle, 525 So.2d 1012 (Fla. 4th DCA), rev. denied, 536 So.2d 244 (Fla. 1988); Sullivan; From. Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or *460 assumed to exist by the parties to the communication. From.
Whether a statement is one of pure or mixed opinion is an issue of law. Sullivan; From. In determining whether the statement is one of pure or mixed opinion, the court must examine the statement in its totality and the context in which it was uttered or published. The court must consider all of the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement and consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published. Sullivan; From.
Some of the statements attributed to the Rissman defendants may be expressions of pure opinion. However, the comment about Hoch implies that he could be improperly influenced in his judicial decision-making. This comment is based on facts not disclosed and would not be an expression of pure opinion. See Chiavarelli v. Williams, 256 A.D.2d 111, 681 N.Y.S.2d 276 (1998) (allegation that hospital official would misuse his supervisory power to obtain sexual favors was not an expression of opinion and stated a claim for libel per se).

E. Malice.
As a public official, Hoch was required to prove that the publisher of the defamatory statement acted with "actual malice." Actual malice is established by showing that the publication was made with knowledge that it was false or with reckless disregard of whether it was false or not. See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Nodar v. Galbreath, 462 So.2d 803 (Fla.1984); Scholz v. RDV Sports, Inc., 710 So.2d 618 (Fla. 5th DCA 1998); Times Publishing Co. v. Huffstetler, 409 So.2d 112 (Fla. 5th DCA 1982), rev. denied, 417 So.2d 329 (Fla.1982).
The court below held that Hoch failed to show there was an issue of fact that the Rissman defendants made the defamatory statement with "actual malice." However, the Rissman defendants themselves acknowledged that the statement was disparaging and false and that they never believed such a statement about Hoch. This establishes that the Rissman defendants knew the statement was false and is a sufficient showing on the issue of actual malice.

F. Conspiracy.
The court below dismissed the count of Hoch's complaint which alleged that the Rissman defendants had conspired to defame him. A conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose by unlawful means. Nicholson v. Kellin, 481 So.2d 931 (Fla. 5th DCA 1985). Conspiracy is not a separate or independent tort but is a vehicle for imputing the tortuous actions of one co-conspirator to another to establish joint and several liability. Ford v. Rowland, 562 So.2d 731 (Fla. 5th DCA), rev. denied, 574 So.2d 141 (Fla.1990).
Hoch alleged that the Rissman defendants had planned the seminars to solicit business for themselves and their firm, that they gathered "inside" information and scripted it to be presented at the seminars and that each person who made a presentation was acting as an agent of the group. Hoch further alleged that the defamatory statement at the seminars was made by either Theodore Goldstein or Steven Rissman acting as an agent for the Rissman defendants, pursuant to a common plan or scheme formulated by the Rissman defendants to promote their own economic interest.
Accepting these allegations as true as we must do, they are clearly sufficient to withstand a motion to dismiss. See Nicholson *461 (a cause of action for conspiracy was stated where complaint alleged that the defendants, who were officers, directors and stockholders of a company which distributed vending machines, acted in concert to defraud investors who agreed to purchase machines from the company); Kent v. Kent, 431 So.2d 279 (Fla. 5th DCA 1983)(a cause of action for conspiracy was stated where complaint alleged that trustee and his son conspired to deplete trust assets in a scheme to defraud trust beneficiaries). Thus we reinstate the conspiracy count. See Ford.

G. Section 621.07
The court below held that Hoch's claims against the Rissman law firm and its members were barred by section 621.07.[3] Assuming that this section were applicable, the members of the firm would be liable only for wrongful acts or misconduct committed by them or by someone under their direct supervision and control. Otherwise their liability would be no greater than that of a shareholder-employee of any domestic business corporation. See Gershuny v. Martin McFall Messenger Anesthesia Professional Association, 539 So.2d 1131 (Fla.1989).
The Rissman defendants argue that this section bars Hoch's claims against the members of the firm who did not attend and had no involvement with the seminars. They also argue that Hoch's claims against members who did not discuss Hoch and who had no direct supervision and control over those attorneys participating at the seminars are barred.
These arguments, however, ignore the lack of complete discovery[4] in this case and the burden that is on the defendants to conclusively establish their entitlement to a summary judgment. The fact that not all the Rissman defendants attended or spoke at the seminars would not necessarily defeat Hoch's claims for slander and conspiracy to defame. At this point, it is yet to be determined which members of the law firm, if any, made the defamatory statement and whether any of the Rissman defendants engaged in wrongful acts or misconduct.

H. Libel Count against DeCiccio
In his libel count against DeCiccio and his law firm, Hoch alleged that a recording of one of the seminars was transcribed by DeCiccio and that a copy of this memorandum was faxed to attorney Michael Bross. The complaint further alleged *462 that the publication was made to Bross with the knowledge and intent that the defamation would be republished by Bross.
DeCiccio admitted that he received a microcassette tape from an anonymous source in September or October of 1994. DeCiccio played the tape but was unable to understand it. DeCiccio discussed a worker's compensation case with Bross in late 1994 or early 1995. DeCiccio asked Bross what he would do if he discovered that Rissman was making derogatory statements about him. Bross said he would probably file suit. Some time later (anywhere from two to three hours to two days), Bross received the Riscorp memorandum in his Melbourne office. The memorandum was faxed from a Kinko's in Orlandothere was no cover letter with the fax and there was no name on it. Bross was upset about the contents and called Rissman to complain about it. Bross also mentioned the memo to Judge Johnson, another compensation claims judge, and faxed the memo to him.
The key issue in Hoch's claim against DeCiccio is whether Hoch can establish that DeCiccio published the defamation. There is no evidence or inference from the evidence that would show who actually faxed the memorandum or where it came from. The faxed memorandum could have come from DeCiccio, from the person who sent the tape to DeCiccio, or from any number of attorneys who became aware of its existence. This evidence is legally insufficient to establish DeCiccio's involvement, and thus summary judgment was properly entered in his favor.
AFFIRMED in part; REVERSED in part and REMANDED.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] Steven Rissman, Richard Weisberg, Robert Barrett, Robert Bennett, John McLain, Stacie Greene, Theodore Goldstein, Joseph Farrell, Warren Sponsler, John Daly and Raymond Lopez.
[2] We also grant Hoch's motion for appellate attorney's fees and costs on the condition that he prevail below and meets the requirements of the offer of judgment statute and rule.
[3] Liability of officers, agents, employees, shareholders, members, and corporation or limited liability company.

Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict, or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct; provided, however, that any officer, agent, member, manager, or employee of a corporation or limited liability company organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct supervision and control, while rendering professional services on behalf of the corporation or limited liability company to the person for whom such professional services were being rendered; and provided further that the personal liability of shareholders of a corporation, or members of a limited liability company, organized under this act, in their capacity as shareholders or members of such corporation or limited company shall be no greater in any aspect than that of a shareholder-employee of a corporation organized under chapter 607 or a member-employee of a limited liability company organized under chapter 608. The corporation or limited liability company shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents, members, managers, or employees while they are engaged on behalf of the corporation or limited liability company in the rendering of professional services.
[4] The trial court made a preliminary ruling that all communications between the law firm and its members and Riscorp at the May 1994 seminar were absolutely privileged.