[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10331
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00191-CDL

ROBERT J. FREY,

Plaintiff-Counter Defendant-Appellant,

versus

ANTHONY BINFORD MINTER,

Defendant-Counter Claimant-Appellee,

HAROLD BLACH, JR.,

Defendant-Appellee,

HUNTON ANDREWS KURTH LLP,

Respondent.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(October 1, 2020)

Before MARTIN, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Robert Frey, an attorney proceeding *pro se*, appeals the district court's summary judgment order dismissing his defamation action. He first argues that the district court erred by applying Georgia law. He also contends that the district court in the Middle District of Florida abused its discretion in transferring the action to the Middle District of Georgia. Finally, he asserts that the district court erred in denying his motion to remand the case to state court.

For the following reasons, we affirm.

## I

This appeal involves a defamation lawsuit that Mr. Frey filed against Harold Blach and his attorney, Anthony Minter. The parties are familiar with the procedural history and generally agree to the underlying facts. We therefore do not recount the story in full detail.

In short, the three men became embroiled in litigation regarding Mr. Frey's former client, against whom both Mr. Frey and Mr. Blach held judgments. Mr. Blach, represented by Mr. Minter, pursued a garnishment of the client's wages in Georgia state court to satisfy his judgment, and Mr. Frey filed a third-party claim in that lawsuit. The outcome of that litigation is not of concern, other than to note that it became acrimonious and that Mr. Minter sent letters to the court and the Georgia

state bar accusing Mr. Frey of fraud.  Mr. Minter communicated those accusations to a reporter for a local Georgia newspaper, who published the statements in print and online.

Mr. Frey sued Mr. Minter and Mr. Blach in the Middle District of Florida for defamation.  He voluntarily dismissed the case after the district court ordered it transferred to the Middle District of Georgia.  Mr. Frey then brought a substantially similar action in a Florida state court.

In the Florida lawsuit, Mr. Frey claimed that Mr. Minter's statements to the Georgia newspaper were defamatory *per se* because they involved false allegations of civil and criminal fraud, as well as violations of the Georgia Rules of Professional Conduct.  Mr. Frey at first demanded $15,001 in damages but amended his complaint to request another $10,000,000 in punitive damages.  The defendants removed the case to the Middle District of Florida based on diversity jurisdiction, and then filed a motion to transfer to the Middle District of Georgia.  The district court granted the motion to transfer.

The transferee court in Georgia denied Mr. Frey's motions to transfer the case back to the Middle District of Florida and to remand.  The district court also granted in part the defendants' Rule 12(b)(6) motion to dismiss, applying Georgia law and concluding that Mr. Frey failed to state a claim for defamation *per se* but sufficiently pled a claim for defamation *per quod*.  The district court later granted the defendants'

motion for summary judgment, concluding that Mr. Frey did not present evidence of special damages (such as lost profits), which he was required to do for his remaining claim of defamation *per quod*. Mr. Frey appealed.

## II

Mr. Frey first challenges the district court's conclusion that Georgia law applies to his defamation claim, although it is not clear to what end. Both Florida and Georgia require proof of special damages for a plaintiff to sustain a claim of defamation *per quod*. *See McGee v. Gast*, 572 S.E.2d 398, 401 (Ga. Ct. App. 2002); *Tip Top Grocery Co. v. Wellner*, 186 So. 219, 221 (Fla. 1938); *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. Dist. Ct. App. 1999). And the district court granted summary judgment in favor of the defendants because Mr. Frey did not offer any evidence of special damages.

It is likely that Mr. Frey hopes to establish a conflict of law with respect to the district court's earlier Rule 12(b)(6) partial dismissal so that he can maintain a claim for defamation *per se* under Florida law. Although he does not say this explicitly, we will assume as much for our analysis. And although Mr. Frey designated only the final judgment in his notice of appeal, we still have jurisdiction to review the non-final order granting in part and denying in part the motion to dismiss. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 724–25 (11th Cir. 2020) ("[W]hen a notice of appeal designates  the final, appealable

4

order—and does not identify specific parts of that order for appeal—we have jurisdiction to review that order and any earlier interlocutory orders that produced the judgment.").  That does not change the outcome, however, because we conclude that the district court correctly applied Georgia law.

We review a choice-of-law determination *de novo* and any underlying factual findings for clear error.  *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1239 (11th Cir. 2007).  Neither party disputes that Florida choice-of-law rules govern, as the case was transferred from the Middle District of Florida.  *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (explaining that "[f]ederal courts sitting in diversity apply the forum state's choice-of-law rules" and that when a case is transferred, "the transferor court's choice-of-law rules apply").

Florida resolves conflict-of-laws questions for torts using the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws.  *See Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). When determining the state that has the most significant relationship to the events and the parties, courts consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of

Conflict of Laws § 145 ("The General Principle").  *See also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).  "These factors are considered according to their relative importance with respect to the particular issue."  *Michel*, 816 F.3d at 694 (internal quotation marks omitted).[1]

The Restatement also includes a section on multistate defamation cases, which provides that the "state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state."  Restatement (Second) of Conflict of Laws § 150.  Even if "some or all of the defamer's acts of communication were done in another state, if there was publication in the state of plaintiff's domicil and if the plaintiff is known only in this state and consequently his reputation only suffered injury there," the law of the plaintiff's domicile will usually be applied.  *See id*. cmt. e.

That section and comment would appear at first glance to support the application of Florida law in this case.  Mr. Frey's injury occurred in part in Florida, where he resides, and the article was available in Florida via the internet.  The comment further provides, however, that in multistate defamation cases, the state of the plaintiff's domicile is not necessarily the state of most significant relationship "if one of the other states [in which the defamatory statement was published] has a more

---

[1] For quotations to the Restatement, we leave in place its archaic spelling of the word "domicil." Everywhere else, we use the modern version, "domicile."

significant relationship to the occurrence and the parties." *Id.* This may be the case where (1) the plaintiff is better known in that state than the state of his domicile; (2) the statement was "related to an activity of the plaintiff that is principally located in [that] state," (3) "the plaintiff suffered greater special damages in [that] state than in the state of his domicil," or (4) the statement's place of principal circulation was in the non-domicile state. *See id. See also Michel*, 816 F.3d at 694.

This paradigm more accurately describes the situation here, particularly with respect to the second and fourth factors. The allegedly defamatory statements were about Mr. Frey's conduct in Georgia state court proceedings. And even though the statements were published online and therefore available in Florida, the print circulation was primarily in Georgia.

With those multistate defamation principles in mind, we return to the four factors and the general principles of § 145 of the Restatement. Relevant to the first factor—the location where the injury occurred—Mr. Frey is licensed to practice law in Georgia, but he lives and maintains his law office in Florida, and he represents both Florida and Georgia citizens in matters involving Georgia or federal law. Based on those facts, it is not entirely clear where Mr. Frey's injury occurred. But we will assume—as did the district court—that the first factor weighs in favor of Florida law.

Even with that point going to Mr. Frey, the others are a wash or heavily favor the application of Georgia law. As for the second factor, the conduct causing the injury occurred in Georgia because the statements were made in Georgia by a Georgia resident and, again, the local newspaper's principal circulation is in Georgia. As to the third factor—the residence of the parties—Mr. Frey is a Florida resident, but Mr. Minter resides in Georgia and Mr. Blach resides in Alabama. This factor is a tie at best. In any event, the residency factor carries less weight here because the issues and circumstances of this case are centered in Georgia. *See Michel*, 816 F.3d at 694; Restatement (Second) of Conflict of Laws § 150 cmt. e. It is also less important given that Mr. Frey has demonstrated his willingness and ability to travel to the Middle District of Georgia, as he represents clients and has recently appeared in cases there. The fourth factor weighs heavily in favor of Georgia law because the parties' relationship is centered around the litigation that took place in Georgia.

Weighing the relevant factors, while also keeping in mind the principles specific to multistate defamation, we conclude that Georgia has the most significant relationship to this case. The district court therefore correctly applied Georgia law.

### III

Mr. Frey's arguments attacking the transfer under 29 U.S.C. § 1404(a) are moot. Whether the case had proceeded in the Middle District of Florida or in the

8

Middle District of Georgia, Florida choice-of-law rules would still govern, Georgia law would still apply, and Mr. Frey's defamation claim would still fail on the merits.

The transferor court, in any event, did not abuse its discretion in transferring the case, and the transferee court did not err in declining to send it back. A case may be transferred to a district in which a civil action "might have been brought." § 1404(a). A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, events giving rise to Mr. Frey's claim occurred in the Middle District of Georgia, which was therefore a permissible transferee venue.

Mr. Frey's arguments fail to show an abuse of discretion by the transferor court. Courts consider numerous factors in determining whether to transfer a case under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Many of these factors clearly weigh in favor of transfer here. The allegedly defamatory statements were published in Georgia and the events giving rise to those statements occurred in Georgia. Mr. Frey demonstrated that he is willing and able to travel to

Georgia because he appeared in Georgia courts leading up to this case. And, notably, a court in the Middle District of Florida previously transferred a substantially similar case, which Mr. Frey voluntarily dismissed to file this action.

**IV**

We finally address the district court's denial of Mr. Frey's motion to remand. We review that decision *de novo*. *See City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

A notice of removal of a civil action must be filed within 30 days of the defendant's receipt of the initial pleading. *See* 28 U.S.C. § 1446(b)(1). When the initial pleading is not removable, however, a notice of removal may be filed within 30 days of the defendant receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

Litigating on the merits, or "taking some substantial offensive or defensive action in the state court action," waives a defendant's right to remove a state court action to federal court. *See Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (internal quotation marks omitted). This type of waiver is case-specific. *See id.* "[T]he filing of a motion to dismiss in and of itself does not necessarily constitute a waiver of the defendant's right to proceed in the federal forum." *Id.* (internal quotation marks omitted).

The district court correctly denied Mr. Frey's motion to remand. The defendants litigated the motion to dismiss in state court, but only during a time when they could not have known that the case was removable. The defendants propounded jurisdictional interrogatories to Mr. Frey, but his responses were vague and did not state that he was seeking damages above the federal amount-in-controversy requirement. *See* 28 U.S.C. § 1332. Mr. Frey responded only that he sought "compensatory damages and undetermined punitive damages in such sum as a jury finds just and proper" and that he would not "speculate as to the amount of damages that may be awarded." It was only from Mr. Frey's amended complaint—and his $10,000,000 request for punitive damages—that the defendants were able to ascertain that diversity jurisdiction existed. The defendants did not waive their ability to remove because, up until that point, Mr. Frey obscured the factual basis for removal. The defendants submitted their notice of removal within 30 days of Mr. Frey filing his amended complaint.

## V

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**