**FUN SPOT OF FLORIDA, INC.,
John Arie, Plaintiffs,**

v.

**MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., Magical Midway, Inc., John B. Morgan, Robin Turner, Barry Frank, Defendants.**

**No. 6:01CV633–ORL–28JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 6, 2002.

Stephen D. Milbrath, Herbert L. Allen, Allen, Dyer, Doppelt, Milbrath, & Gilchrist, P.A., Kieran F. O'Connor, Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Orlando, FL, for plaintiffs.

Keith R. Mitnik, Morgan, Colling & Gilbert, P.A., Tucker H. Byrd, Gregory W.

Byrd, Gregory W. Herbert, Greenberg Traurig, P.A., David C. Knapp, Rogers, Coleman, Pendas, Knapp, & Dill, P.A., Orlando, FL, for defendants.

## ORDER

ANTOON, District Judge.

This cause is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 39, filed June 3, 2002) and Defendants' Motion for Partial Summary Judgment (Doc. 62, filed June 3, 2002). The United States Magistrate Judge has submitted a Report and Recommendation (Doc. 108, filed October 1, 2002) that Plaintiffs' motion be granted in part and denied in part; and that Defendants' motion be denied.

After an independent review of the record in this matter, including the Objection filed by Defendants (Doc. 117, filed October 15, 2002) and the response filed by Plaintiffs (Doc. 118, filed October 22, 2002), the Court agrees with the findings of fact and conclusions of law in the Report and Recommendation.

This case involves a dispute over the design of go-kart tracks located at Magical Midway amusement park. Plaintiffs allege copyright infringement, conspiracy to misappropriate trade secrets, misappropriation of trade secrets, breach of confidence, unjust enrichment, fraud in the inducement, trade disparagement in violation of 15 U.S.C. § 1125(a), slander, libel, trademark infringement, and trade dress infringement. (Doc. 27). The Defendants assert several affirmative defenses including the economic loss rule, license, joint works, and work-for-hire. Defendants also filed a counterclaim seeking a declaratory judgment, a temporary injunction, and a permanent injunction; and seeking damages for common law unfair competition, trade libel/disparagement in violation of 15 U.S.C. § 1125(a) and unfair and deceptive trade practices in violation of § 501.201 *et seq.*, Florida Statutes. (Doc. 28).

Plaintiffs' Dispositive Motion for Summary Judgment as to Certain Affirmative Defenses and the Counterclaim seeks summary judgment as to the following four affirmative defenses: the economic loss rule, license, joint works and work-for-hire. In addition, the Plaintiffs' motion seeks summary judgment as to Defendants' counterclaim. (Doc. 39). Defendants' Motion for Partial Summary Judgment and Incorporated Memorandum of Law seeks summary judgment as to Plaintiff's allegations of copyright infringement, slander and libel. (Doc. 62).

### A. *Defendants' Motion for Summary Judgment*

To establish a prima facie case of copyright infringement, a plaintiff must demonstrate two elements: (1) that he owns a valid copyright in the allegedly copyrighted materials; and (2) that the defendant copied original elements of those materials. *See Calhoun v. Lillenas Publ'g,* 298 F.3d 1228, 1232 (11th Cir.2002) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). The Plaintiffs in this case have a registered copyright, and are thus entitled to a presumption of validity and originality that accompanies that registration certificate. Therefore, the Defendants must rebut the presumption of validity. The Magistrate Judge explained that "[t]he defendants have failed to show that no reasonable juror could find that the copyright is valid, and that no reasonable jury could find that [the plaintiff] is the owner of a valid copyright in the go-kart

track designs. Genuine issues of material fact remain with regard to the validity and ownership of the copyright. Genuine issues of fact also remain as to whether the defendants copied [the plaintiff's] designs when they designed and constructed Magical Midway." (Doc. 108 at 13). As a result, the Magistrate Judge recommended that summary judgment be denied as to Plaintiffs' allegation of copyright infringement.

In addition, the Magistrate Judge concluded that summary judgment should be denied as to plaintiffs' slander and libel claims. To sustain a cause of action for slander under Florida law, a plaintiff must demonstrate that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the party suffered damages as a result of the publication. *See Valencia v. Citibank Int'l*, 728 So.2d 330 (Fla.3d D.C.A.1999). Libel is defined as the unprivileged written publication of false statements. *See Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir.1999).

The Plaintiffs allege that Defendant John B. Morgan ("Mr.Morgan") told John Arie's ("Mr.Arie") attorney, Ladd Fassett ("Mr.Fassett"), that Mr. Arie had his wife murdered. Defendants argue that Mr. Morgan's communication to Mr. Fassett was privileged because Mr. Arie's attorney is not a "third party" for purposes of publication of a defamatory statement. The Magistrate Judge explained that "[a]lthough a conditional privilege exists for [Mr.] Morgan's communications to [Mr.] Fassett for the purposes of negotiating a business transaction, any defamatory statement that Morgan may have made to [Mr.] Fassett with the purpose of destroying the attorney-client relationship and harming [Mr.] Arie's business falls outside of the conditional privilege." (Doc. 108 at 16). The Report and Recommendation further explains that a material issue of fact remains as to the purpose of the statements made by Mr. Morgan to Mr. Fassett.

Additionally, the Magistrate Judge concluded that issues of material fact remain as to whether statements made in an August 24, 2000 letter from Mr. Morgan to Mr. Arie regarding the safety of the go-kart tracks at Fun Spot were defamatory and published to a third party. The letter states that Fun Spot's go-kart tracks are likely to cause death or serious injury. The Report and Recommendation notes that "[t]he defendants have not shown that no reasonable juror could find that defamatory statements were published to a third party." (Doc. 108 at 16). As a result the Magistrate Judge concluded that summary judgment should not be 'granted with regard to Plaintiffs' slander and libel claims.

### B. *Plaintiffs' Motion for Summary Judgment*

In the Report and Recommendation, the United States Magistrate Judge also concluded that Plaintiffs' motion for summary judgment should be granted in part and denied in part. According to the Magistrate Judge, summary judgment should be granted to Plaintiffs as to Defendants' affirmative defenses relying on the economic loss rule, license and work for hire. However, the Magistrate Judge recommended the denial of summary judgment with regard to the affirmative defense of joint work. The Magistrate Judge explained that the economic loss rule is not an appropriate affirmative defense in this case because the defendants have taken the position that they did not enter into contracts with the Plaintiffs. In addition, the Re-

port and Recommendation notes that "[d]efendants have cited no legal authority extending the economic loss rule to a case that does not involve a contract." (Doc. 108 at 17–18). With regard to the affirmative defense of license, the Magistrate Judge concluded that "[a]s a matter of law, even if [Plaintiff] had granted a license to the defendants, no license continued after revocation on April 12, 2000." (Doc. 108 at 18). Regarding the defendants' affirmative defense of work for hire, the Magistrate Judge noted that "there is no evidence that the defendants ever employed [the Plaintiff], or that [the Plaintiff] produced the designs within the scope of such employment . . . [d]efendants never paid anything to [Plaintiff] for his drawings [and t]he defendants never hired or employed [Plaintiff]." (Doc. 108 at 19). The Magistrate Judge concluded that "no reasonable juror could find that [Plaintiff] created the drawings for defendants in the scope of such employment." (Doc. 108 at 19). Therefore, the Report and Recommendation recommends that summary judgment be granted with regard to Defendants' affirmative defenses of economic loss rule, license and work for hire.

However, with regard to the affirmative defense of joint work, the Report and Recommendation explains that "genuine issues of material fact remain as to whether the drawings for which [Plaintiff] holds a copyright certificate are joint works authored by [Plaintiff] and by the architects employed by defendants." (Doc. 108 at 19). A joint work requires two separate authors who create two separate works with the intention of combining them together into a single work. *See* 17 U.S.C. § 101. "Taken in the light most favorable to the defendants, it is conceivable that a reasonable juror could find that [ ] cooperation with defendants' architects constitutes cre-

ation of a joint work." (Doc. 108 at 20). Thus, the Report recommends that the Court deny summary judgment as to Defendants' affirmative defense of joint work.

The Magistrate Judge also recommended that summary judgment be granted as to Counts II–V of Defendants' counterclaim, but found summary judgment inappropriate as to Count I. Count I of Defendants' counterclaim seeks a declaratory judgment that Plaintiff and Fun Spot have no ownership interest in Magical Midway, or alternatively, that the go-kart track designs are jointly owned by Plaintiffs and Defendants. (Doc. 28 at 20). According to the Magistrate Judge, summary judgment should be denied with regard to this count because there are material issues of fact that remain as to whether or not Plaintiffs and Defendants jointly own the work or whether Defendants' infringed upon Plaintiff's go-kart copyright. (Doc. 108 at 20). As for the remaining counts, however, the Report and Recommendation advises the grant of summary judgment. In reaching this conclusion, the Magistrate judge explains that "defendants offer virtually no legal authority to support any of their claims, and only three citations to facts in the record." (Doc. 108 at 21–22).

### C. *Defendants' Objections to Report and Recommendation*

In the Defendants' Objections to the Magistrate's Report and Recommendation (Doc. 117), the Defendants argue that the Magistrate Judge failed to consider factual and legal issues that would preclude summary judgment with regard to the affirmative defenses of license and work for hire. In addition, the Defendants generally object to the entry of summary judgment on the counterclaims of unfair compensation,

trade libel disparagement and injunctive relief. Lastly, the Defendants object to the denial of summary judgment on Plaintiffs' slander claim pertaining to the alleged oral statements by Mr. Morgan to Mr. Fassett.

The Court agrees with the conclusions of the Magistrate Judge. In particular, this Court agrees with the conclusion that Plaintiffs' motion for summary judgment should be granted with regard to Defendants' affirmative defenses of license and work for hire. The owner of a copyright can transfer his copyright to another individual by granting that person a license. A grant of exclusive license must be in writing. 17 U.S.C. § 204(a). However, the owner of a copyright may allow another person to use the copyrighted material without transferring ownership of the copyright. *See Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 752 (11th Cir.1997). The federal copyright act provides that the licensor may terminate a license during the last five years of a 35–year–period following the granting of the license. 17 U.S.C. § 203. In the Eleventh Circuit, this time period is not the only time during which a license may be terminated. *See Korman v. HBC Florida, Inc.,* 182 F.3d 1291, 1297 (11th Cir.1999).

There is no evidence in the record that there is a writing in which Plaintiffs grant the Defendants an exclusive license for the use of Plaintiffs' copyrighted drawings. Although a reasonable juror could find that Plaintiffs granted the Defendants an oral or implied non-exclusive license, that license clearly would have been revoked as of the date of Mr. Arie's letter to Defendants on April 12, 2000. (Doc. 52, Ex. 35). Even if, as Defendants argue, Plaintiffs could not unilaterally revoke such a license, Defendants accepted Plaintiffs revocation by promising not to use any of Mr.

Arie's drawings in the design and construction of Magical Midway. (Doc. 50 at 275–77). In addition, the Defendants' Objection to the Report and Recommendation does not refer to any other factual evidence or case law that would bolster Defendants' position. Defendants' primary argument in their objection to the Report and Recommendation with regard to the affirmative defense of license focuses on the failure of the business venture between Plaintiffs and Defendants. For example, the Defendants argue that "Plaintiff Arie could not simply walk away from the project, 'pulling the rug' out from beneath the Defendants, and leaving them guessing as to how to try to put together an alternative design." (Doc. 117 at 2). This argument does not necessarily address the narrow issue of whether Plaintiffs granted Defendants a license and whether or not that license was revoked. The Defendants do not address Mr. Arie's April 12, 2000 letter or provide any other evidence that would suggest that Mr. Arie did in fact grant Defendants a license and never revoked that license. As a result, this Court agrees with the Magistrate Judge's conclusion that summary judgment should be granted as to Defendants' affirmative defense of license.

The Defendants also object to the Report and Recommendation's rejection of their work for hire defense asserted under 17 U.S.C. § 101. The copyright statute is very specific as to the requirements of a work made for hire. *See* 17 U.S.C. § 101. Under the statute, there are only two ways in which a work can be considered "made for hire": 1) if the work was made in the scope of the author's employment; or 2) if it was specially ordered or commissioned for use for one of several specifically named purposes. *Id.* In addition, the statute requires that the parties state, in writ-

ing, their intent that the work be made for hire. *Id.* Defendants have not provided any evidence that they hired Mr. Arie, or that Mr. Arie produced the go-kart track designs within the scope of employment. Nor do the Defendants provide any written agreement or other writing that shows the Defendants' intent that Mr. Arie's work be made for hire. Thus, the Court agrees that summary judgment should be granted as to Defendants' work for hire defense.

In addition, this Court agrees that Plaintiffs' motion for summary judgment with regard to Defendants' counterclaims II–IV should be granted. Again, Defendants fail in their Objection to provide case law to support their legal conclusions, and additionally they fail to set forth a factual record demonstrating the existence of material issues of fact with regard to their objections.

The Defendants also object to the denial of summary judgment with regard to Plaintiffs' slander claim pertaining to the alleged defamatory statement by Mr. Morgan to Mr. Fassett. According to the Defendants, the Magistrate Judge failed to address whether the statements to Arie's attorney constituted a true publication to a third party. (Doc. 117 at 4). However, the following excerpt of the Report and Recommendation specifically addresses this issue:

> Defendants argue that summary judgment should be granted as to plaintiffs' slander and libel claims because the statements were not published to a third party in either case....However, genuine issues of material fact remain as to that issue on both counts. To sustain a cause of action for slander or libel, the defamatory language must be published to a third party. Publication does not

occur if the communication is conditionally privileged....A conditional privilege may exist between a party and another party's attorney, particularly when the communications are related to a matter pending between the parties. *Maine v. Allstate Ins. Co.*, 240 So.2d 857, 858 (Fla.Dist.Ct.App.1970).

> Plaintiffs allege that Morgan told Arie's attorney, Ladd Fassett ("Fassett"), that Arie had murdered his wife. Plaintiffs allege that Morgan made the defamatory statement "with the specific intent to inflict harm upon Plaintiff and to injure Plaintiff in his business, all in order to obtain an improper competitive advantage." Doc. No. 27, ¶ 117. Defendants argue that Morgan's communication to Fassett was privileged because Arie's attorney is not a "third party" for purposes of publication of a defamatory statement. Defendants are wrong.

> Although a conditional privilege exists for Morgan's communications to Fassett for the purposes of negotiating a business transaction, any defamatory statement that Morgan may have made to Fassett with the purpose of destroying the attorney-client relationship and harming Arie's business falls outside the conditional privilege. The conditional privilege does not extend to a statement made with intent to harm, or to separate a client from his attorney. A material issue of fact remains as to the context and purpose of the statements made by Morgan to Arie.

(Doc. 108 at 15–16). In the Report and Recommendation, the Magistrate Judge clearly addressed Defendants' argument with regard to publication. The Defendants' Objection does not address any of the legal arguments raised by the Magistrate Judge. Nor do the Defendants offer

any legal precedent that reaches a contrary conclusion or any factual evidence that persuades the Court to disagree with the Magistrate Judge's recommendation. Therefore, the Court agrees with the Magistrate Judge with regard to the denial of summary judgment regarding Plaintiffs' slander claim.

Therefore, it is ORDERED as follows:

1. The Report and Recommendation (Doc. 108, filed October 1, 2002) is **ADOPTED** and **CONFIRMED** and made part of this Order.

2. The Plaintiffs' Motion for Summary Judgment (Doc. 39, filed June 3, 2002) is **GRANTED** in favor of Plaintiffs as to Defendants' second affirmative defense based on the economic loss rule; sixth affirmative defense based on license; and tenth affirmative defense based on work-for-hire. Summary judgment is **DENIED** as to Defendants' ninth affirmative defense based on joint works. Summary judgement shall also be **GRANTED** as to Counts II–V of the counterclaim, and **DENIED** as to Count I of the counterclaim.

3. The Defendants' Motion for Partial Summary Judgment (Doc. 62, filed June 3, 2002) is **DENIED**.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration on the following motions:

**MOTION: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 39)**

**FILED: June 3, 2002**

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

**MOTION: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 62)**

**FILED: June 3, 2002**

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff Fun Spot of Florida, Inc. ("Fun Spot") operates an amusement attraction located near International Drive in Orlando, Florida. Docket No. 27, ¶ 19. Fun Spot includes elevated, multi-level go-kart tracks and other amusement park related activities. Id. at ¶ 20. Plaintiff John Arie ("Arie") is the president of Fun Spot, and the designer of its go-kart tracks. Id. at ¶ 16, 20.

Defendant Magical Midway, Inc. is a Florida corporation, and the general partner of defendant Magical Midway of Central Florida, Ltd., a Florida limited partnership. Docket No. 27, ¶ 6. Magical Midway of Central Florida, Ltd. operates the Magical Midway amusement park located on International Drive in Orlando, Florida. Docket No. 90 at 3. Defendant John B. Morgan ("Morgan") is a lawyer and entrepreneur, and president of Magical Midway, Inc. Id. Defendant Robin Turner ("Turner") is a businessman involved in various amusement related activities, and is also a director and officer of Magical Midway, Inc. Id. Defendant Barry Frank ("Frank") is a real estate broker and business associate of Morgan and Turner. Id. Frank was employed by Magical Midway, Inc. Id. Magical Midway, Inc. and Magical Midway of Central Flori-

da, Ltd. will each be referred to as "Magical Midway," as the distinction between the two is not necessary for the purposes of this report and recommendation.

In approximately August 1999, Morgan contacted Arie with a business proposition. Morgan proposed that Arie work with Morgan and the other defendants to develop a new amusement park. The new facility would include go-kart tracks based on Arie's designs. Docket No. 27, ¶ 30. Morgan selected a site on International Drive that the new company would lease from his business associate, Nur Ullah Kahn. Over the next several months, Arie and the defendants discussed and planned for the new amusement park, and Arie contributed his designs for elevated go-kart raceways. *Id.* at ¶ 32. In approximately April 2000, Arie informed defendants that, because of their failure to fulfill promises and representations, he was withdrawing from the project. *Id.* at ¶ 33. Arie told defendants that he did not want them to use any of his designs for the project, and that defendants should return all copies of the designs to him. *Id.* at ¶ 33. Defendants subsequently agreed not to use Arie's designs in the design and construction of Magical Midway. Docket No. 49 at 72, lines 7—19. The project continued. Magical Midway opened to the public featuring go-kart tracks which plaintiffs contend infringe Arie's copyright. Docket No. 90 at 9.

### B. Procedural Background

This case centers on a dispute over the design of the go-kart tracks located at Magical Midway. Plaintiffs allege copyright infringement, conspiracy to misappropriate trade secrets, misappropriation of trade secrets, breach of confidence, unjust enrichment, fraud in the inducement, trade disparagement in violation of 15 U.S.C. § 1125(a), slander, libel, trademark infringement, and trade dress infringement. Docket No. 27. Defendants assert several affirmative defenses including the economic loss rule, license, joint works, and work-for-hire. Defendants also filed a counterclaim seeking a declaratory judgment, a temporary injunction, and a permanent injunction; and seeking damages for common law unfair competition, trade libel/disparagement in violation of 15 U.S.C. § 1125(a) and unfair and deceptive trade practices in violation of §§ 501.201 et. seq., Florida Statutes. Docket No. 28.

Plaintiffs' Dispositive Motion for Summary Judgment as to Certain Affirmative Defenses and the Counterclaim seeks summary judgment as to the four affirmative defenses (*i.e.*, defenses based on the economic loss rule, license, joint works, and work-for-hire) and as to defendants' counterclaim.[1] Docket No. 39. Defendants' Motion for Partial Summary Judgment and Incorporated Memorandum of Law seeks summary judgment as to the complaint's allegations of copyright infringement, slander, and libel.[2] Docket No. 62.

## II. THE LAW

### A. Standard of Review on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

---

**1.** Plaintiffs filed a memorandum in support (Docket No. 40), a statement of material facts (Docket No. 41), an appendix of deposition testimony and supporting materials (Docket No. 42), the depositions of John Arie, James E. Downs, Jr., Barry Frank, Jeffrey Gaither, John B. Morgan, Bill Sims, Robin Turner, Nur Ullah Khan, Robert E. Blenden, Stephen R. Teliga, Harry Brumley, III, and Domenic

A. Macaione (Docket Nos. 43—58), and a notice of additional authority (Docket No. 85). Defendants filed a memorandum in opposition to plaintiffs' motion for summary judgment. Docket No. 82.

**2.** In support of the motion, defendants filed the depositions (with exhibits) of Morgan, Turner, Frank, Arie, Ladd Fassett, Jeffrey

terrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593—94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission

Gaither, and Peter Filtenborg Olesen (Docket Nos. 63—70). Plaintiffs filed a memorandum in opposition (Docket No. 74), a statement of material facts with attached exhibits (Docket No. 75), an appendix of affidavits and materials (Docket No. 76), the depositions of John Jordan, Harry Brumley, III, and Peter Filtenborg Olesen (Docket Nos. 77—81), and a powerpoint presentation (Docket No. 91).

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. On summary judgment, the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

### B. *Material Submitted in Opposition to Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House*, 146 F.3d 832, 834 (11th Cir.1998), *citing Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505.

A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett–Murray Corporation v. Bone*, 622 F.2d 887, 893 (5th Cir.1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir.1984).

### C. *Copyright Infringement and Related Affirmative Defenses*

#### 1. *Copyright Infringement*

To establish a prima facie case of copyright infringement, a plaintiff must demonstrate two elements: 1) that he owns a valid copyright in the allegedly copyrighted materials; and 2) that the defendant copied original elements of those materials. *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir.2002), *citing*

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). As to the first element, only a "minimal degree of originality" is required in order to merit copyright protection. *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. A copyright certificate constitutes prima facie evidence of originality. Furthermore, the plaintiff may benefit from a rebuttable presumption that the copyright is valid if he produces a certificate of copyright registration. *Superchips, Inc. v. Street & Performance Electronics, Inc.*, 61 U.S.P.Q.2d (BNA) 1589 (M.D.Fla.2001), citing *Donald Frederick Evans & Assocs. Inc. v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir.1986).

As to the second element, a plaintiff must show that the defendant had access to the copyrighted work, and that the alleged copy is substantially similar so that "an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Calhoun*, 298 F.3d at 1232, quoting *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 829 (11th Cir.1982). Copyright infringement is generally a question of fact for a jury to decide. *Leigh v. Warner Bros. Inc.*, 212 F.3d 1210, 1213 (11th Cir. 2000).

### 2. *Economic Loss Rule*

■ Defendants raise the economic loss rule as an affirmative defense to plaintiffs' tort claims. Docket No. 28. Under Florida law, "contract principles are more appropriate than tort principles to resolve purely economic claims." *Airport Rent–A–Car v. Prevost Car. Inc.*, 660 So.2d 628, 630 (Fla.1995). Florida courts apply the economic loss rule to prevent tort recovery "when damages flow from a breach of contract unless the tort is independent of the

breach of contract." *Brass v. NCR Corp.*, 826 F.Supp. 1427, 1428 (S.D.Fla.1993).

The Florida Supreme Court has held that claims are barred by the economic loss rule if claims are factually "interwoven" with the breach of contract claim. *Florida College of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 982 F.Supp. 862 (M.D.Fla.1997) (citing *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996)). It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence. *Serina v. Albertson's Inc.*, 744 F.Supp. 1113, 1115 (M.D.Fla. 1990); *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So.2d 518, 519 (Fla.Dist.Ct.App.1986).

### 3. *License*

The owner of a copyright can transfer his copyright to another person by granting that person a license. A grant of an exclusive license must be in writing. 17 U.S.C. § 204(a). The owner of a copyright may also allow another person to use the copyrighted material without transferring ownership of the copyright. An oral agreement or implied license is enforceable in the case of a non-exclusive license which does not transfer ownership of the copyright. *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir.1997). The federal copyright act provides that the licensor may terminate a license during the last five years of a 35–year period following the granting of the license. 17 U.S.C. § 203. In the Eleventh Circuit, this time period is not the *only* time period during which a license may be terminated. If state law provides that licenses of indefinite duration may be terminated in less than 35 years, it is the state law and not

section 203, that governs the timing of termination. *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1297 (11th Cir.1999).

 Florida contract law states that "when a contract does not contain an express statement as to duration, the court should determine the intent of the parties by examining the surrounding circumstances and by reasonably construing the agreement as a whole." *City of Homestead v. Beard*, 600 So.2d 450, 453 (Fla. 1992). A contract may be terminable at will if it does not specify a duration, but the terminating party must give reasonable notice. *Perri v. Byrd*, 436 So.2d 359, 361 (Fla.Dist.Ct.App.1983).

#### 4. *Joint Works*

The federal copyright act defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. An author is the "person who translates an idea into a fixed, tangible expression." *Community For Creative Non–Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). A work is "fixed" when it is embodied in a copy. 17 U.S.C. § 102(b). The "two or more authors" of a joint work must each contribute separate works that are each independently copyrightable. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493 (11th Cir.1990).

#### 5. *Work for Hire*

The federal copyright statute defines a "work made for hire" as

a work prepared by an employee *within the scope of his or her employment;* or a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, *if the parties expressly agree in a written instrument signed by them* that the work shall be considered a work made for hire.

17 U.S.C. § 101 (emphasis added). To determine whether a work is a work for hire under the Act, a court uses the principles of the general law of agency to ascertain whether the work was prepared by an employee or an independent contractor. *Community for Creative Non–Violence, et al. v. Reid*, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). In determining whether a "hired party" is an employee or independent contractor under the general common law of agency, the court considers the following factors:

the hiring party's right to control the manner and means by which the product is accomplished ... the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is party of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.*

#### D. *Slander and Libel*

To recover for libel or slander under Florida law, a plaintiff must demonstrate

that: 1.) the defendant published a false statement; 2.) about the plaintiff; 3.) to a third party; and 4.) the party suffered damages as a result of the publication. *Valencia v. Citibank International,* 728 So.2d 330 (Fla.3d D.C.A.1999); *Buckner v. Lower Florida Keys Hospital Dist.,* 403 So.2d 1025, 1027 (Fla.3d D.C.A.1981). Libel is defined as the unprivileged written publication of false statements. *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191 (11th Cir.1999).

■ A defamatory statement is one that tends to harm someone's reputation in the community, or deters others from associating with the person. *Thomas v. Jacksonville Television, Inc.,* 699 So.2d 800, 803 (Fla.Dist.Ct.App.1997). A false defamatory statement which suggests that someone has committed a dishonest or illegal act is slander *per se.* Slander *"per se"* is actionable on its face, but slander *"per quod"* requires additional explanation of the words used to show that they have a defamatory meaning or that the person defamed is the plaintiff. *Hoch v. Rissman,* 742 So.2d 451 (Fla.Dist.Ct.App.1999); *Hood v. Connors,* 419 So.2d 742 (Fla.Dist.Ct.App.1982).

■ In slander *per se* actions, general damages are presumed. In *per quod* actions, the plaintiff must allege and prove special damages. *Hoch,* 742 So.2d at 451. An oral communication that imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office is slander *per se. Campbell v. Jacksonville Kennel Club,* 66 So.2d 495 (Fla.1953); *Wolfson v. Kirk,* 273 So.2d 774 (Fla. 4th D.C.A.1973); *Sprovero v. Miller,* 404 So.2d 793 (Fla.3d D.C.A.1981) (statements which imputed conduct and characteristics to the plaintiff which were incompatible with the exercise of his construction business constituted slander *per se*); *see also Chiavarelli v. Williams,* 256 A.D.2d 111, 681 N.Y.S.2d 276 (1998) (allegation that hospital official would misuse his supervisory powers to obtain sexual favors stated a claim for defamation *per se*).

## III. APPLICATION

### A. Undisputed Facts

There are virtually no undisputed facts. Even though each of the parties has submitted a motion for summary judgment that argues that there are no genuine issues of material fact on some points, the parties were able to agree on only three facts in their joint pre-trial statement: that Fun Spot of Florida, Inc. is a Florida corporation in good standing, that Magical Midway, Inc. is a Florida corporation in good standing, and that Magical Midway of Central Florida, Ltd. is a Florida limited partnership, the general partner of which is Magical Midway, Inc. Docket No. 90, page 25. On the contrary, the parties list thirty-five issues of fact and law which they agree remain in dispute. Docket No. 90 at 25—28.

### B. Defendants' Motion for Partial Summary Judgment

Defendants seek summary judgment as to plaintiffs' claims of copyright infringement, slander, and libel. Docket No. 62.

#### 1. Copyright Infringement

Material issues of fact remain as to copyright infringement. Plaintiffs have a registered copyright, and are entitled to the presumption of validity and originality

that accompanies that registration certificate. Docket No. 41, ¶¶ 43—45. The defendants, therefore, must rebut the presumption of validity. The defendants have failed to show that no reasonable juror could find that the copyright is valid, and that no reasonable jury could find that Arie is the owner of a valid copyright in the go-kart track designs. Genuine issues of material fact remain with regard to the validity and ownership of the copyright. Genuine issues of fact also remain as to whether the defendants copied Arie's designs when they designed and constructed Magical Midway.

■ Defendants argue that the copyrighted work is not original because Arie copied the design from go-kart tracks located in Wisconsin. Docket No. 62 at 5. Arie admits that he observed and studied go-kart tracks in Wisconsin prior to designing and constructing the go-kart tracks at Fun Spot, and prior to designing the go-kart tracks originally intended for construction at Magical Midway. Docket No. 43 at 45—47. However, the law requires that a work reflect only "a minimal degree of originality" in order to merit copyright protection. *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. Even if Arie's designs were based on ideas derived from his observations of other tracks, his designs may still have sufficient originality to withstand a challenge to the copyright. Defendants have failed to show that no reasonable juror could find that Arie's works lack a minimal degree of creativity. Whether or not Arie's work is sufficiently original to merit copyright protection is a question for the jury.

■ Defendants further argue that plaintiffs do not own a valid copyright in the works because the works are not prop-

erly "fixed in a tangle medium" pursuant to 17 U.S.C. § 102(a). Defendants contend that the works are merely preliminary sketches, and that the sketches do not accurately reflect the idea of elevated go-kart tracks that Arie is accusing the defendants of copying. Docket No. 62 at 5. Defendants point out places in Arie's deposition where he admits that the drawings contain mistakes, and where he states that a person would find it difficult to visualize and properly construct the go-kart tracks based on his drawings. Docket No. 62 at 10—13. However, the architects working with Magical Midway, did, in fact, take those same drawings and incorporate them into their architectural plans for Magical Midway. Docket No. 74 at 8. Whether the drawings for which Arie holds a copyright certificate are works that are "fixed in a tangle medium" is a question for the jury.

■ Defendants argue that they did not infringe Arie's copyright as a matter of law, even assuming that Arie owns a valid copyright in the designs. Defendants argue that plaintiffs allege nothing more than the copying of component parts of the drawings. It is true that the basic, ordinary component parts of an architectural work or design work are not themselves entitled to copyright protection. *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F.Supp. 1560, 1563 (M.D.Fla.1995). Some components of a go-kart track are not themselves eligible for copyright, such as incorporation of a track width that accommodates the cars, and the inclusion of walls that keep the go-karts on the track. Nevertheless, the creator's independent selection and arrangement of component parts into an overall, original design may be copyrighted. *Id.*

According to defendants, Arie admits that Magical Midway's go-kart tracks took

nothing more than ordinary components from Arie's two designs. Defendants, therefore, argue that Magical Midway's tracks do not infringe Arie's designs. Docket No. 62 at 14 (citing Docket No. 43 at 129—32). However, Arie has made no admission that his designs include nothing but ordinary components. Furthermore, defendants have failed to show that Arie's valid copyright (assumed here *arguendo* by defendants) covers only basic components, and does not cover Arie's arrangement of components into a functional track design. There are genuine issues of fact as to infringement.

■ Defendants also argue that there was no infringement of a copyright because "no reasonable juror could conclude that the [d]efendants' track design is 'substantially similar' to the [d]rawings." Docket No. 62 at 16. Such a conclusion cannot be drawn from the facts of this case. There are both similarities and differences between plaintiffs' and defendants' track designs. Whether or not the similarities are substantial enough to infringe is a question for the jury.

### 2. *Slander and Libel*

Defendants argue that summary judgment should be granted as to plaintiffs' slander and libel claims because the statements were not published to a third party in either case. Docket No. 62 at 19. However, genuine issues of material fact remain as to that issue on both counts. To sustain a cause of action for slander or libel, the defamatory language must be published to a third party. Publication does not occur if the communication is conditionally privileged. Florida law embraces a broad range of conditional privileges. *Magre v. Charles,* 729 So.2d 440, 443 (Fla. 5th DCA 1999), citing Restate-MENT (Second) of Torts § 593 (1976). A conditional privilege may exist between a party and another party's attorney, particularly when the communications are relate to a matter pending between the parties. *Maine v. Allstate Ins. Co.,* 240 So.2d 857, 858 (Fla.Dist.Ct.App.1970).

Plaintiffs allege that Morgan told Arie's attorney, Ladd Fassett ("Fassett"), that Arie had murdered his wife. Plaintiffs allege that Morgan made the defamatory statement "with the specific intent to inflict harm upon Plaintiff and to injure Plaintiff in his business, all in order to obtain an improper competitive advantage." Doc. No. 27, ¶ 117. Defendants argue that Morgan's communication to Fassett was privileged because Arie's attorney is not a "third party" for purposes of publication of a defamatory statement. Defendants are wrong.

■ Although a conditional privilege exists for Morgan's communications to Fassett for the purposes of negotiating a business transaction, any defamatory statement that Morgan may have made to Fassett with the purpose of destroying the attorney-client relationship and harming Arie's business falls outside the conditional privilege. The conditional privilege does not extend to a statement made with intent to harm, or to separate a client from his attorney. A material issue of fact remains as to the context and purpose of the statements made by Morgan to Arie. The jury must determine the context and purpose of Morgan's statement to determine whether Morgan made the statement with improper motive. See Florida Standard Jury Instructions, § MI 4.3 (1976); *see also, Nodar v. Galbreath,* 462 So.2d 803 (Fla. 1984).

■ Issues of material fact also remain as to whether the statements made in an

August 24, 2000 letter from Morgan to Arie regarding the safety of the go-kart tracks at Fun Spot were defamatory and published to a third party. The letter states that Fun Spot's go-kart tracks are likely to cause death or serious injury. Docket No. 76, Exhibit D. Copies of the letter were sent to co-defendants Frank and Turner. *Id.* The letter, as well as the depositions of Turner, Morgan, and Fassett, indicate that the safety of Fun Spot's tracks was discussed between several defendants and several other people. Docket No. 75, ¶¶ 180—187. The defendants have not shown that no reasonable juror could find that defamatory statements were published to a third party.

### C. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs seek summary judgment as to four of defendants' affirmative defenses, as well as to defendants' entire counterclaim. Docket No. 39.

#### 1. *Affirmative Defenses*

##### a. *Economic Loss Rule*

■ Summary judgment should be granted to plaintiffs on defendants' affirmative defense relying on the economic loss rule. Plaintiffs argue that the economic loss rule does not apply in this case because the defendants have taken the position that defendants entered into no contracts with Arie. Docket No. 40 at 7. Plaintiffs further argue that, even if the economic loss rule did apply, there are independent tort claims that the rule does not preclude. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238, 1239 (Fla.1996) (specifically identifying fraud in the inducement as an independent tort cause of action that is not barred by the economic loss rule).

But no party in this case alleges a breach of contract. At most, plaintiffs allege that defendants conspired to cause Arie to believe he would eventually contract with the defendants to own and operate Magical Midway. Plaintiffs allege that defendants led Arie to believe there would be a contract because they needed his expertise in designing the go-kart tracks for Magical Midway. Docket No. 27, ¶¶ 44—47. Plaintiffs' eleven causes of action include copyright infringement, conspiracy to misappropriate trade secrets, misappropriation of trade secrets, breach of confidence, unjust enrichment, fraud in the inducement, trade disparagement, slander, libel, trademark infringement and trade dress infringement, but not breach of contract. Defendants have cited no authority extending the economic loss rule to a case that does not involve a contract. As a matter of law, the affirmative defense fails.

##### b. *License*

■ The Court should grant summary judgment to the plaintiffs on defendant's affirmative defense that Arie granted a license to defendants to use his drawings in the planning and construction of Magical Midway. There is no evidence (and no party argues) that there is a writing in which Arie grants the defendants an exclusive license for the use of his copyrighted designs. A reasonable juror could find that Arie granted the defendants an oral or implied non-exclusive license. But any such license would have been revoked as of the date of Arie's April 12, 2000 letter. Docket No. 52, Exhibit 35. Even assuming that Arie could not unilaterally revoke such a license, defendants accepted Arie's revocation by promising not to use any of Arie's drawings in the design and construction of Magical Midway. Docket No.

50 at 275—77; *see also* Docket No. 82 at 4—5. Defendants repeatedly instructed their contractors not to use Arie's designs, and repeatedly asked Arie for his approval of their designs. *Id.* As a matter of law, even if Arie had granted a license to the defendants, no license continued after revocation on April 12, 2000.

### c. *Work for Hire*

■■■ Summary judgment should be granted to plaintiffs on defendants' affirmative defense that Arie produced the drawings of the go-kart tracks as part of a "work made for hire" for defendants. The copyright statute is very specific as to the requirements of a work made for hire. *See* 17 U.S.C. § 101. Under the statute, there are only two ways in which a work can be considered "made for hire": 1) if the work was made in the scope of the author's employment; or 2) if it was specially ordered or commissioned for use for one of several specifically named purposes. *Id.*

First, there is no evidence that the defendants ever employed Arie, or that Arie produced the designs within the scope of such employment. The use of the word "hire" in the statute suggests payment to the author. The dictionary definition of the word hire is "to engage the services of [a person] *for a fee* …" The American Heritage Dictionary of the English Language, New College Edition (Houghton Mifflin Co.1981) (emphasis added). Defendants never paid anything to Arie for his drawings. The defendants never hired or employed Arie. Applying the list of factors to be considered in making a determination of whether a work was created within the scope of employment, no reasonable juror could find that Arie created the drawings for defendants in the scope of such employment. *See Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

Second, for a work to be considered made for hire for a specifically-named purpose, the statute expressly requires that the parties state, *in writing,* their intent that the work be made for hire. *Id.* No such writing exists. The track designs therefore were not works for hire that defendants specially ordered or commissioned for a specifically named purpose. Summary judgment should be granted to plaintiffs on defendants' work-for-hire affirmative defense.

### d. *Joint Work*

■■■ Genuine issues of material fact remain as to whether the drawings for which Arie holds a copyright certificate are joint works authored by Arie and by the architects employed by defendants. A joint work requires two separate authors who create two separate works with the intention of combining them together into a single work. *See* 17 U.S.C. § 101. Defendants argue that they contributed to a joint work because they had various discussions with Arie regarding what the go-kart tracks would look like. Docket No. 82 at 7. This argument is without merit. As defendants themselves point out, ideas are not copyrightable. Even a person who reviews drawings in progress, makes suggestions and corrections, and has final approval authority over the work is not considered an author for the purposes of a joint work. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1492 (11th Cir.1990). No reasonable juror could find that one or more of the defendants was himself an author who worked with Arie to create a joint work.

However, there is a genuine issue of fact as to whether Arie worked with the defendants' architects to create a joint work. It is true that the architects gave Arie a site plan which he used to create his drawings for the go-kart tracks. Docket No. 41, ¶¶ 36—37, 40, 53—54. He then gave his drawings to the architects so that the architects could use the drawings in the plans for Magical Midway. *Id.* Taken in the light most favorable to the defendants, it is conceivable that a reasonable juror could find that this cooperation with defendants' architects constitutes creation of a joint work. A genuine issue of material fact remains as to whether the defendants and Arie intended that their works be combined into an inseparable and interdependent whole. *See* 17 U.S.C. § 101.

### 2. *Counterclaim*

Count I of the counterclaim seeks a declaratory judgment that Arie and Fun Spot have no ownership interest in Magical Midway, or alternatively, that the go-kart track designs are jointly owned by plaintiffs and defendants. Docket No. 28 at 20. As previously discussed, material issues of fact remain as to whether Arie may enforce his copyright in the go-kart track designs, whether defendants infringed Arie's copyright, and whether plaintiffs and defendants jointly own copyrights in the designs as a joint work. Therefore summary judgment is inappropriate as to Count I of the counterclaim.

The counterclaim also alleges common law unfair competition (Count II); trade libel/disparagement pursuant to 15 U.S.C. § 1125(a) (Count III); unfair and deceptive trade practices pursuant to §§ 501.201 et seq., Florida Statutes (Count IV); and seeks temporary and permanent injunctions (Count V). Summary judgment should be granted as to Counts II—V because Magical Midway has failed to demonstrate that material issues of fact remain.

While the court looks at the facts in the light most favorable to the non-moving party, the non-moving party has the burden of setting forth the genuine issues of fact that remain. *LaChance v. Duffy's Draft House,* 146 F.3d 832, 834 (11th Cir. 1998), citing *Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. The Honorable John Antoon, III entered a Case Management and Scheduling Order in this case on July 10, 2001. Docket No. 21. Judge Antoon ordered the parties to file with any memorandum in opposition to a motion for summary judgment a concise statement of the material facts as to which the opposing party contends there exists a genuine issue for trial. The order required the parties to provide pinpoint citations to the pages and lines of record supporting each material fact, and warned that general references to a deposition are inadequate. According to Judge Antoon's order, material facts set forth in the statement required to be served by the moving party "will be deemed admitted for the purposes of the motion unless controverted by the opposing party's statement." Docket No. 2 at 5, ¶ H(1).

As discussed below, plaintiffs articulate the reasons why there is no material issue of fact as to each element of Counts II—V. In response, defendants offer virtually no legal authority to support any of their claims, and only three citations to facts in the record. Docket No. 82 at 12—14. Instead, defendants state that "plaintiffs' entire argument that Defendants' counterclaims are subject to summary judgment appear to be somehow premised upon the presumption that Plaintiffs will prevail on

the merits of each of their claims, or otherwise simply ignores ample record evidence supporting the allegations of the counterclaims." Docket No. 82 at 12. Defendants have failed to articulate the allegedly "ample record evidence supporting defendants' counterclaims" despite an order to do so. Summary judgment for the plaintiffs, therefore, is appropriate on Counts II—V of the counterclaim.

Summary judgment should be granted as to Count II of defendants' counterclaim alleging common law unfair competition. Plaintiffs argue that there are no facts from which a jury could conclude that plaintiffs have engaged in unfair competition. In support of this argument, plaintiffs include citations to the record and outline the relevant law. Docket No. 40 at 12—14. In response, defendants simply allege that plaintiffs engaged in passing off, reverse passing off, and unfair competition, but cite no evidence to support those conclusions. Docket No. 82 at 12—13.

Furthermore, defendants cite no Florida law supporting their contention that plaintiffs have violated Florida's common law of unfair competition. *Id.* Instead, defendants cite two Second Circuit cases, a Southern District of New York case, and an excerpt from the Orlando Business Journal (a copy of which has not been included in the record). *Id.* None of these cases cite Florida law. More importantly, defendants cite no facts in the record, and do nothing to refute plaintiffs' analysis of the facts. *Id.* Defendants have failed to demonstrate that a material issue of fact remains with regard to common law unfair competition.

Summary judgment should be granted as to Count III of defendants' counterclaim alleging trade disparagement pursuant to 11 U.S.C. § 1125(a). Docket No. 28 at 21. The Court assumes that defendants meant 15 U.S.C. § 1125(a), although the response to plaintiffs' motion for summary judgment cites no law at all. Docket No. 82.[3] Plaintiffs outline the elements of trade disparagement, and argue that there is no evidence in the record to support the claim as to each element. Docket No. 40 at 14—15. In their response, defendants cite to evidence that Arie may have made disparaging comments regarding Magical Midway to several people. Docket No. 82 at 13—14. Plaintiffs are correct that this evidence falls short of proving the elements of a § 1125(a) claim. Defendants present no evidence that Arie's statements were sufficiently disseminated to the public to constitute advertising or promotion in the amusement park industry, and were made for the purpose of influencing customers to frequent Fun Spot instead of Magical Midway. *Id.*

Summary judgment should be granted to the plaintiffs with regard to Count IV of

---

**3.** Defendants do not specify under which clause of § 1125(a) they intend to state a claim. Plaintiffs assume that defendants intend to invoke the commercial speech clause, and defendants did not object to that assumption. *See* Docket No. 40 at 14. A cause of action for product disparagement includes the following elements: 1) there must be "commercial advertising or promotion" constituting commercial speech of or concerning another's goods or services or commercial activities, 2) by a defendant who is in commercial competition with plaintiff, 3) for the purpose of influencing consumers to buy defendant's goods or services, and 4) the promotion must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273—74 (10th Cir.2000); *Coastal Abstract Serv., Inc. v. First Am. Tit. Ins. Co.*, 173 F.3d 725, 734 (9th Cir.1999); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1384 (5th Cir.1996).

the counterclaim alleging unfair and deceptive trade practices pursuant to Florida's Deceptive and Unfair Trade Practices Act ["DUTPA"]. Docket No. 28 at 22. First, plaintiffs argue that the DUTPA has no application to this case because none of the parties is a "consumer." Only consumers have a cause of action under the DUTPA. See *Nassau v. Unimotorcyclists Society of America*, 59 F.Supp.2d 1233, 1243 (M.D.Fla.1999); *Warren Technology, Inc. v. Hines Interests Ltd. Partnership*, 733 So.2d 1146 (Fla. 3d DCA 1999). Docket No. 40 at 16–17. Second, plaintiffs argue that there are no facts from which a jury could conclude that Fun Spot has engaged in unfair or deceptive trade practices. Docket No. 40 at 17.

Defendants acknowledge that they cannot bring a claim for damages under DUTPA because they are not consumers. Instead, defendants argue that they are entitled to an injunction against further unfair and deceptive acts by plaintiffs.[4] Docket No. 82 at 14. Although an injunction is a form of relief that may be awarded to a party who has successfully proved a DUTPA violation, defendants fail to cite evidence that proves unfair and deceptive acts. In fact, defendants do not refute plaintiffs' contention that no such evidence exists. Docket No. 82.

Finally, Count V of the counterclaim seeks a temporary and permanent injunction enjoining Fun Spot and "anyone acting in active concert or participation with Fun Spot" from:

i. making any further false representations that Defendants have an ownership or other interest in Plaintiff's Attraction or any component thereof;

ii. making any other false representations concerning the Plaintiff or the Attraction in any manner;

iii. continuing to interfere in any way with Plaintiff's operations or construction of the Attraction;

iv. engaging in any further deceptive or fraudulent acts of any kind in the course of competing with plaintiff;

v. committing any further deceptive or fraudulent acts of any kind in the course of competing with Plaintiff;

vi. requiring Defendants to perform any reasonable acts or execute any documents necessary to ensure complete and thorough enforcement of and compliance with the Court's injunction order; and

vii. any other relief the Court deems necessary and appropriate.

Docket No. 28 at 24. Once again, a permanent injunction is a form of relief that the Court may award to a party who has successfully proved the elements of a cause of action recognized under the law. Defendants address none of these elements, and offer no proof of any cause of action for which injunctive relief may be awarded.[5] Summary judgment should be granted with regard to Count V of the counterclaim.

## IV. CONCLUSION

Accordingly, it is **RECOMMENDED** that Plaintiffs' Motion for Partial Sum-

---

**4.** See *Big Tomato v. Tasty Concepts, Inc.*, 972 F.Supp. 662, 664 (S.D.Fla.1997) (competitors may seek injunctive relief, but not damages, under Fla. Stat. § 501.211(1)); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F.Supp.2d 1271 (S.D.Fla.2001) (denying defendant's motion to dismiss complaint seeking "injunctions and a declaration by the court that [defendant] has engaged in unfair and deceptive trade practices," which was held to be adequately pleaded under Fla. Stat. § 501.211(1)).

**5.** To the extent that defendants seek a preliminary injunction, they fail to comply with Local Rules 4.05 and 4.06 regarding the procedural requirements of applying for temporary restraining orders and preliminary injunc-

mary Judgment (Docket No. 39) be **GRANTED in part and DENIED in part.** It is further

**RECOMMENDED** that summary judgment be **GRANTED** in favor of plaintiffs as to defendants' second affirmative defense based on the economic loss rule; sixth affirmative defense based on license; and tenth affirmative defense based on work-for-hire. Summary judgment should be **DENIED** as to defendants' ninth affirmative defense based on joint works. It is

**FURTHER RECOMMENDED** that summary judgment be **GRANTED** as to Counts II—V of the counterclaim, and **DENIED** as to Count I of the counterclaim. It is

**FURTHER RECOMMENDED** that Defendants' Motion for Partial Summary Judgment (Docket No. 62) be **DENIED.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.[6]

Dated Oct. 1, 2002.

tions. A district court may grant injunctive relief only if the moving party shows that: 1) it has a substantial likelihood of success on the merits of the cause of action; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000) (citations omitted).

6. Defendant Magical Midway of Central Florida, Ltd. Filed a Suggestion of Bankruptcy in this court on September 24, 2002. Docket No. 104 (styled Magical Midway of Central Florida, Ltd., Case No. 02–10363–GJ1). The automatic stay, 11 U.S.C. § 362, therefore applies to this defendant, the limited partnership. Accordingly, defendant Magical Midway of Central Florida, Ltd. shall file and serve objections to this report and recommendation within ten days of the entry of an order that has the effect of lifting the stay.